# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

JOHNNY WONG, On Behalf of Himself and All Others Similarly Situated,

      Plaintiff,

v.

RESOLUTE ENERGY CORPORATION,
TOD C. BENTON,
RICHARD F. BETZ,
JOSEPH CITARRELLA,
WILKIE S. COLYER,
JAMES E. DUFFY,
THOMAS O. HICKS, JR.,
GARY L. HULTQUIST,
JANET W. PASQUE,
ROBERT J. RAYMOND,
NICHOLAS J. SUTTON, and
WILLIAM K. WHITE,

      Defendants.

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Johnny Wong ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Resolute Energy Corporation ("Resolute Energy" or the "Company") against Resolute Energy and the members of Resolute Energy's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities

Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Resolute Energy will be acquired by Cimarex Energy Co. ("Cimarex") through its wholly owned subsidiaries, CR Sub 1, Inc. ("Merger Sub 1") and CR Sub 2 LLC ("Merger Sub 2") (the "Proposed Transaction").

2.      On November 18, 2018, Resolute Energy and Cimarex issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated November 18, 2018 (the "Merger Agreement") to sell Resolute Energy to Cimarex.  Pursuant to the terms of the Merger Agreement, Resolute Energy's stockholders may elect to receive, subject to proration: (i) $14.00 in cash and 0.2366 shares of Cimarex common stock; (ii) $35.00 in cash; or (iii) 0.3943 shares of Cimarex common stock for each share of Resolute Energy they own (the "Merger Consideration"). The Merger Consideration is subject to proration so that the aggregate consideration paid consists of 60% Cimarex common shares and 40% cash, based on the closing sale prices for Cimarex shares on November 16, 2018.  The Proposed Transaction is valued at approximately $1.6 billion.

3.      On December 14, 2018, defendants filed a Form S-4 Registration Statement (as amended on January 10, 2019, the "Registration Statement") with the SEC in connection with the Proposed Transaction.  The Registration Statement, which recommends that Resolute Energy stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Resolute Energy's and Cimarex's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Goldman Sachs & Co. LLC ("Goldman") and Petrie Partners Securities, LLC ("Petrie"); (iii) the background process leading to the Proposed Transaction; and (iv) potential conflicts of interest faced by Goldman and Petrie.  The failure to adequately disclose

such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Resolute Energy stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4.      In short, unless remedied, Resolute Energy's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act.

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Resolute Energy is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Resolute Energy.

9.      Defendant Resolute Energy is a Delaware corporation, with its principal executive offices located at 1700 Lincoln Street, Suite 2800, Denver, Colorado 80203.  Resolute Energy's common stock trades on the New York Stock Exchange under the ticker symbol "REN."

10.      Defendant Tod C. Benton ("Benton") has been a director of the Company since August 2017.

11.      Defendant Richard F. Betz ("Betz") has been Resolute Energy's Chief Executive Officer ("CEO") and a member of the Board since January 2017.  He previously served as Executive Vice President and Chief Operating Officer of the Company from March 2012 through December 2016, Senior Vice President, Strategy and Planning of the Company from September 2009 to March 2012, and Vice President—Business Development of the Company from July 2009 to September 2009.

12.      Defendant Joseph Citarrella ("Citarrella") has been a director of the Company since May 15, 2018.  Defendant Citarrella is also a Managing Principal at Monarch Alternative Capital LP ("Monarch"), which owns approximately 9.7% of Resolute Energy's outstanding shares. Defendant Citarrella was appointed to the Board pursuant to a May 15, 2018 settlement agreement with Monarch regarding nominations to the Company's Board and related matters (the "Monarch Settlement Agreement").

13.      Defendant Wilkie S. Colyer ("Colyer") has been a director of the Company since May 15, 2018.  Defendant Colyer is also a Principal for Goff Capital, Inc. ("Goff"), which owns

approximately 8.4% of Resolute Energy's outstanding shares.  Defendant Colyer was appointed to the Board pursuant to the Monarch Settlement Agreement.

14.     Defendant James E. Duffy ("Duffy") has been a director of the Company since September 2009.

15.     Defendant Thomas O. Hicks, Jr. ("Hicks") has been a director of the Company since September 2009.

16.     Defendant Gary L. Hultquist ("Hultquist") has been a director of the Company since February 2014.

17.     Defendant Janet W. Pasque ("Pasque") has been a director of the Company since August 2017.

18.     Defendant Robert J. Raymond ("Raymond") has been a director of the Company since May 15, 2018.  Defendant Raymond is also the founding member and portfolio manager of RR Advisors, LLC d/b/a RCH Energy ("RR Advisors"), which together with its affiliates beneficially owns approximately 2.4% of the Company's outstanding shares.  Defendant Raymond was appointed to the Board pursuant to the Monarch Settlement Agreement.

19.     Defendant Nicholas J. Sutton ("Sutton") has been Executive Chairman of the Board since January 2017 and a director of the Company since 2009.  He previously served as Chairman of the Board and Resolute Energy's CEO from the Company's formation in July 2009 until January 2017.

20.     Defendant William K. White ("White") has been a director of the Company since April 2014.

21.     Defendants identified in paragraphs 10-20 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

22.     Cimarex is a Delaware corporation with its principal offices located at 1700 Lincoln Street, Suite 3700, Denver, Colorado 80203.  Cimarex's common stock trades on the New York Stock Exchange under the ticker symbol "XEC."

23.     Merger Sub 1 is a Delaware corporation and a wholly-owned subsidiary of Cimarex.

24.     Merger Sub 2 is a Delaware limited liability company and a wholly-owned subsidiary of Cimarex.

**CLASS ACTION ALLEGATIONS**

25.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Resolute Energy common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

26.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

27.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of November 16, 2018, there were 23,163,462 shares of Company common stock issued and outstanding.  All members of the Class may be identified from records maintained by Resolute Energy or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

28.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

        a)      Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

        b)      Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

        c)      Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

29.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

31.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

31.     Resolute Energy is a publicly traded, independent oil and gas company engaged in the exploitation, development, exploration for and acquisition of oil and gas properties with assets located in the Delaware Basin in west Texas.  The Company's development activity is focused on its 27,100 gross (21,100 net) acres, approximately 90% of which is located in northern Reeves

County, Texas. The Company's corporate strategy is to drive organic growth in production, cash flow and reserves through development of its Reeves County acreage and to pursue opportunistic acquisitions in the Delaware Basin.

32.    During 2017 oil sales comprised approximately 84% of the Company's revenue, and the Company's December 31, 2017, estimated net proved reserves were approximately 53.4 million barrels of oil equivalent, of which approximately 49% were classified as proved developed producing reserves. Approximately 47% of its estimated net proved reserves were oil and approximately 70% were oil and natural gas liquids. The December 31, 2017, pre-tax present value discounted at 10% of its net proved reserves was $434 million and the standardized measure of its estimated net proved reserves was $433 million.

**The Sale Process**

33.    Resolute Energy's management and the Board regularly review Resolute Energy's performance, prospects and strategy in light of changing business and economic conditions and developments in the oil and gas exploration and production ("E&P") sector, particularly in West Texas's Permian Basin region where Resolute Energy's assets and operations are located. During 2017 and 2018 certain Resolute Energy stockholders suggested that Resolute Energy consider, among other things, exploring various strategic alternatives.

34.    In February 2018, the CEO of a large-cap multi-basin oil and gas company, referred to in the Registration Statement as "Company X", held a meeting with Petrie, at which the CEO of Company X indicated an interest in exploring a potential business combination with Resolute Energy. On February 7, 2018, Resolute Energy entered into a customary non-disclosure and standstill agreement with Company X.

35.     From late January through mid-May 2018, members of Resolute Energy's senior management team held discussions with Monarch and with other stockholders to better understand their views regarding Resolute Energy, its prospects and its governance.  During this period, the Board met on several occasions, together with members of Resolute Energy's senior management and representatives of its financial advisors, Petrie and Goldman, among others, to discuss the status of discussions of Resolute Energy's senior management with, and input received from, Resolute Energy's stockholders, and to review and discuss Resolute Energy's performance, competitive positioning and potential strategic alternatives.

36.     At a May 15, 2018 Board meeting, the Board determined to promptly conduct, with the assistance of its financial advisors, an in-depth review of Resolute Energy's business plan, competitive positioning and any potential strategic alternatives that could enhance Resolute Energy's goal of creating stockholder value.

37.     On May 22, 2018, the Board met to, among other things, engage Petrie and Goldman to conduct the strategic review discussed at the May 15, 2018 Board meeting and discuss the scope and process for the review.

38.     On August 1, 2018, the Board met to receive independently developed presentations from Petrie and Goldman and to discuss Resolute Energy's business plan, competitive positioning, and a wide range of potential strategic alternatives, including, among other things, potential merger, sale, acquisition, or business combination transactions.  Resolute Energy expected to see significant production growth resulting from its drilling program in the Delaware Basin region of the Permian Basin, and the Board believed that this production growth was not fully reflected in Resolute Energy's stock price.  In light of the challenging conditions for mergers and acquisitions activity in the E&P sector, the Board determined to continue to actively

monitor and evaluate all potential strategic alternatives while also having Resolute Energy pursue its drilling program in the Delaware Basin.

39.     On August 31, 2018, Thomas Jorden ("Jorden"), President and CEO of Cimarex, informed representatives of Petrie of Cimarex's interest in a potential business combination transaction with Resolute Energy.

40.     On September 10, 2018, Cimarex and Resolute entered into a customary non-disclosure and standstill agreement enabling confidential discussions between the parties and exchange of non-public information.

41.     On September 14, 2018 during a discussion of multiple topics, the CEO of Company X confirmed to representatives of Petrie that it was no longer interested in a business combination with Resolute Energy primarily due to its relatively small acreage footprint and gas-weighted production mix.

42.     On October 1, 2018, the Board met and instructed senior management, together with Petrie and Goldman, to conduct a confidential outreach to a number of other potential counterparties to assess the interest of each of the parties in a potential acquisition of, or business combination transaction with, Resolute Energy.

43.     Between October 4 and October 10, 2018, Resolute Energy and its financial advisors contacted eight other industry participants (excluding Cimarex) identified by Resolute Energy's management with the assistance of its financial advisors, as potentially interested in and capable of engaging in a transaction with Resolute Energy that could be compelling to Resolute Energy's stockholders, in order to determine the interest of each participant in exploring a business combination or acquisition transaction with Resolute Energy.  During this time, two additional companies initiated conversation with Resolute Energy regarding a potential combination.

44.     On October 23, 2018, Jorden transmitted a letter to defendant Betz with Cimarex's non-binding indication of interest to acquire Resolute Energy at a price in the range of $35.00 to $37.00 per Resolute Energy share or an implied exchange ratio in the range of 0.390 to 0.412 Cimarex shares per Resolute Energy share, with the consideration ultimately to be paid in the form of a mutually agreed mix of cash and Cimarex shares.

45.     On October 25, 2018, the Board met and determined Resolute Energy should continue to engage with Cimarex regarding a potential transaction, but not grant Cimarex any exclusivity period, prepare to engage with other interested potential counterparties, and further discuss the results of any such conversations at a meeting scheduled for October 30, 2018.

46.     On November 1 and 2, 2018, Resolute Energy's representatives re-contacted a total of six potentially interested companies to determine their interest in a business combination transaction with Resolute Energy.  Of the companies contacted, three subsequently entered into customary non-disclosure and standstill agreements with Resolute Energy and subsequently were provided with certain non-public information, including an oil and gas company which signed a non-disclosure agreement dated November 3, 2018, referred to in the Proxy Statement as "Company A", a second oil and gas company which signed a non-disclosure agreement dated November 6, 2018, referred to in the Proxy Statement as "Company B", and a third oil and gas company which signed a non-disclosure agreement dated November 5, 2018, referred to in the Proxy Statement as "Company C".

47.     On November 15, 2018, Jorden communicated a verbal proposal for an acquisition transaction that would value Resolute Energy at $35.00 per share, with 50% of the consideration to be paid in cash and 50% to be paid in the form of Cimarex stock.

48.     On November 16, 2018, Michael Stefanoudakis, Resolute Energy's Executive Vice President, Corporate Development/Strategy, General Counsel and Secretary contacted Stephen Bell ("Bell"), Cimarex's Executive Vice President of Business Development to seek an improvement in the proposed transaction consideration.  Bell stated that Cimarex was not willing to increase its proposed valuation and that Resolute Energy should consider the proposed $35.00 per share valuation to be Cimarex's best and final offer.  Bell indicated that though Cimarex preferred a higher percentage of cash and viewed a 50%/50% mix as appropriate, he believed Cimarex would be willing to increase the stock component of the consideration to as high as 60% (from 50%), with the remaining 40% to be paid in cash.  Jorden and defendant Betz later spoke telephonically, and Jorden confirmed that Cimarex's best and final offer was $35.00 per share in total value, to be paid 60% in stock and 40% in cash.

49.     In the afternoon of November 18, 2018, the Board met, Petrie and Goldman delivered their fairness opinions and the Board determined to adopt and approve the Merger Agreement and the transactions contemplated thereby.

50.     Thereafter, during the evening of November 18, 2018, Resolute Energy and Cimarex finalized and executed the Merger Agreement.

**The Proposed Transaction**

51.     On November 19, 2018, Resolute Energy and Cimarex issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> DENVER, CO, November 19, 2018 — Cimarex (NYSE: XEC) and Resolute Energy Corporation (NYSE: REN) ("Resolute") today announced that Cimarex has entered into a definitive agreement to acquire Resolute in a cash and stock transaction valued at $35.00 per share, or a total purchase price of approximately $1.6 billion, including Resolute's long term debt of $710 million, as of September 30, 2018. The transaction was unanimously approved by both companies' Boards of Directors.

"This high-quality, bolt-on asset is tailor-made for Cimarex," said Thomas E. Jorden, Chairman, President and CEO of Cimarex. "It is a perfect fit with our existing Reeves County position and will allow us to leverage our knowledge and deliver superior results over a broader asset base for the benefit of both Cimarex and Resolute shareholders. The Resolute assets are expected to generate free cash flow in 2019, basically funding any additional development capital from the start. I want to compliment Rick Betz and the entire Resolute team on the outstanding job that they have done in building these premier Reeves County assets."

Cimarex will continue to maintain an industry-leading cost structure and strong balance sheet. Cimarex expects the combined companies to generate free cash flow in 2020.

"Today's transaction further demonstrates the commitment of the Board of Directors and entire management team at Resolute to maximizing long term value for the company's shareholders," said Rick Betz, Chief Executive Officer of Resolute. "Our dedicated team of talented professionals has worked tirelessly to position this company to be able to capitalize on the tremendous opportunity this merger represents. The combination of our assets and people with the incredibly strong platform that Tom and his team at Cimarex have built will surely lead to superior results for the shareholders of both companies. We look forward to working through a seamless transition with the Cimarex team."

\* \* \*

**Terms and Financing**

Under the terms of the definitive merger agreement, Resolute shareholders will have the right to receive 0.3943 shares of Cimarex common stock, $35 per share in cash, or a combination of $14 per share in cash and 0.2366 share of common stock. The amount of stock and cash is subject to proration for total stock and cash mix of 60% and 40%, respectively.

The consideration represents an approximate 14.8% percent premium to Resolute's closing price of $30.49 on November 16, 2018. Upon closing of the transaction, Cimarex shareholders will own approximately 94.4% of the combined company, and Resolute shareholders will own approximately 5.6%. The transaction, which is expected to be completed by the end of the first quarter of 2019, is subject to the approval of Resolute shareholders, and the satisfaction of certain regulatory approvals and other customary closing conditions.

The cash portion of the transaction is expected to be funded through a combination of cash on hand (including proceeds from the previously announced sale of assets in Ward County, Texas) and borrowings under Cimarex's revolving credit facility.

**The Registration Statement Contains Material Misstatements and Omissions**

- 13 -

52.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Resolute Energy's stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

53.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Resolute Energy's and Cimarex's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Goldman and Petrie; (iii) the background process leading to the Proposed Transaction; and (iv) potential conflicts of interest faced by Goldman and Petrie. Accordingly, Resolute Energy stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Resolute Energy's and Cimarex's Financial Projections***

54.     The Registration Statement is materially deficient because it fails to disclose material information relating to Resolute Energy management's best estimates of the Company's intrinsic value and prospects going forward.

55.     The Registration Statement fails to disclose Resolute Energy management's financial projections that were provided to and relied upon by the Company's financial advisors Goldman and Petrie in connection with their financial analyses.

56.     For example, the Registration Statement sets forth:

In connection with rendering the opinion described above and performing its related financial analyses, Goldman Sachs reviewed, among other things:

\* \* \*

- 14 -

- certain internal financial analyses and forecasts for Resolute prepared by its management, as approved for Goldman Sachs' use by Resolute (the "forecasts").

Registration Statement at 56. In connection with Goldman's *Illustrative Net Asset Value*

*Analysis*, the Registration Statement further sets forth:

> Goldman Sachs performed an illustrative net asset value analysis of Resolute. Goldman Sachs calculated indications of the present value of the after-tax future cash flows that Resolute could be expected to generate from its existing proved developed reserves, its four-year development plan for undeveloped reserves and development of additional undeveloped reserves as of January 1, 2019 using the forecasts.

*Id.* at 58.

57.      Similarly, the Registration Statement states:

> In connection with rendering its opinion and performing its related financial analysis, Petrie Partners, among other things:

* * *

- reviewed certain non-public forecasted financial and operating data relating to Resolute prepared and furnished to Petrie Partners by the management team and staff of Resolute;

- reviewed certain estimates of Resolute's oil and gas reserves, including estimates of proved developed producing and development reserves prepared by Resolute as of January 1, 2019[.]

*Id.* at 62. In connection with Petrie's *Discounted Cash Flow Analysis*, the Registration Statement

further states that "Petrie Partners performed a discounted cash flow analysis to determine

indicative reference values of Resolute common shares based on the present value of the future

after-tax cash flows expected to be generated from proved developed producing and development

reserves based on Resolute's internal estimates." *Id.* at 64.

58.      Yet, the Registration Statement fails to disclose: (i) Resolute Energy's after-tax

future cash flows for the projection period, as well as the definition of after-tax future cash flows

and the line items used to calculate Resolute Energy's after-tax future cash flows; and (ii) the

estimates of Resolute Energy's oil and gas reserves, including estimates of proved developed producing and development reserves prepared by Resolute Energy as of January 1, 2019.

59.    The Registration Statement also fails to disclose Cimarex's financial projections. This information is material, as Resolute Energy stockholders need to be able to evaluate the worth of the Merger Consideration, 60% of which aggregate consideration consists of Cimarex common shares.

60.    Without this information, Resolute Energy stockholders are unable to evaluate the Merger Consideration, Resolute Energy's financial future as a standalone entity, the accuracy of Goldman's and Petrie's financial analyses, or make an informed decision whether the Proposed Transaction maximizes value for Resolute Energy stockholders and serves their interests.

61.    The omission of this information renders the statements in the "Certain Unaudited Forecasted Financial and Operating Information" and "Opinion of Resolute's Financial Advisors" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Goldman's and Petrie's Financial Analyses***

62.    The Registration Statement describes Goldman's and Petrie's fairness opinions and the various valuation analyses performed in support of their opinions.  However, the descriptions of Goldman's and Petrie's fairness opinions and analyses fail to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Resolute Energy's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's and Petrie's fairness opinions in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Resolute Energy's stockholders.

63.     With respect to Goldman's *Illustrative Net Asset Value Analysis*, the Registration Statement fails to disclose: (i) the after-tax future cash flows that Resolute Energy could be expected to generate from its existing proved developed reserves, its four-year development plan for undeveloped reserves and development of additional undeveloped reserves as of January 1, 2019; (ii) quantification of the inputs and assumptions underlying the discount rate range of 10.5% to 12.5%; and (iii) quantification of: (a) the present value of estimated mark to market commodity hedges and earnouts, (b) the present value of general and administrative costs, (c) other corporate expenses, (d) the estimated face value of Resolute Energy's net debt as of December 31, 2018, and (e) the present value of taxes payable by Resolute Energy.

64.     With respect to Petrie's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the after-tax cash flows expected to be generated from proved developed producing and development reserves based on Resolute Energy's internal estimates; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 8% to 20%; and (iii) quantification of each of Resolute Energy's: (a) future estimated general and administrative expenses, (b) commodity derivatives, (c) cash taxes, (d) other assets and liabilities, (e) estimated long-term debt and (f) estimated net working capital as of December 31, 2018.

65.     With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose the quantification of the inputs and assumptions underlying the discount rate of 12.7%.

66.     With respect to Goldman's *Selected Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by Goldman in the analysis.

67.    With respect to Goldman's *Premia Analysis*, the Registration Statement fails to disclose the premiums paid in the transactions observed by Goldman in the analysis.

68.    With respect to Petrie's *Comparable Transaction Analysis* and *Capital Market Comparison Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions and companies analyzed by Petrie.

69.    With respect to Petrie's *Going Concern Analysis*, the Registration Statement fails to disclose: (i) Petrie's basis for applying terminal EBITDA multiples of 3.5x, 4.5x and 5.5x to estimated 2020 EBITDA; (ii) quantification of the inputs and assumptions underlying the discount rates of 10.0% to 15.0%; (iii) long-term debt; and (iv) net working capital.

70.    When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

71.    The omission of this information renders the statements in the "Opinion of Resolute's Financial Advisors" and "Certain Resolute Unaudited Forecasted Financial and Operating Information" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

72.    The Registration Statement omits material information relating to the sale process leading up to the Proposed Transaction.

73.    For example, in connection with the sale process, the Registration Statement states that "[o]n February 7, 2018, Resolute entered into a customary non-disclosure and standstill agreement with Company X." *Id*. at 39.  The Registration Statement further sets forth that:

> On November 1 and 2, 2018, Resolute's representatives re-contacted a total of six potentially interested companies to determine their interest in a business

combination transaction with Resolute. Of the companies contacted, three subsequently entered into customary non-disclosure and standstill agreements with Resolute and subsequently were provided with certain non-public information, including an oil and gas company which signed a non-disclosure agreement dated November 3, 2018 ("Company A"), a second oil and gas company which signed a non-disclosure agreement dated November 6, 2018 ("Company B"), and a third oil and gas company which signed a non-disclosure agreement dated November 5, 2018 ("Company C").

*Id.* at 45.   The Registration Statement fails, however, to expressly indicate whether these confidentiality agreements are still in effect and/or contain "don't ask, don't waive" standstill provisions that are presently precluding these parties from making a topping bid for the Company.

74.     The omission of this information renders the statements in the "Background of the Merger" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Potential Conflicts of Interest Faced by Goldman and Petrie***

75.     The Registration Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisors.

76.     For example, the Registration Statement sets forth that:

Pursuant to a letter agreement dated November 18, 2018, Resolute engaged Goldman Sachs to act as its financial advisor in connection with the contemplated transaction. The engagement letter between Resolute and Goldman Sachs provides for a transaction fee that is estimated, based on the information available as of the date of public announcement of the merger, at approximately $7.5 million, the principal portion of which is contingent upon consummation of the merger."

*Id.* at 61.   The Registration Statement fails, however, to quantify the specific portion of the approximately $7.5 million fee that is contingent upon the consummation of the Proposed Transaction and further fails to disclose what services the non-contingent portion of Goldman's fee is pegged to.

77.    Similarly, the Registration Statement sets forth that "[t]he engagement letter between Resolute and Petrie Partners provides for a transaction fee that is estimated, based on the information available as of the date of public announcement of the merger, at approximately $10.0 million, the principal portion of which is contingent upon consummation of the merger." Id. at 70.    The Registration Statement fails, however, to quantify the specific portion of the approximately $10.0 million fee that is contingent upon the consummation of the Proposed Transaction and further fails to disclose what services the non-contingent portion of Petrie's fee is pegged to.

78.    Additionally, the Registration Statement states that "[d]uring the two-year period prior to the date of the opinion, Petrie Partners performed advisory services for Resolute and its affiliates and received customary compensation for such services."  Id.  Yet, the Registration Statement fails to quantify the compensation received by Petrie for such services.

79.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

80.    The omission of this information renders the statements in the "Opinion of Resolute's Financial Advisors" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

81.    The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make

a fully-informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

82.     Plaintiff repeats all previous allegations as if set forth in full.

83.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

84.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's and Cimarex's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, the background leading up to the Proposed Transaction, and potential conflicts of interest faced by the Company's financial advisors. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

85.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek to exercise their appraisal rights.

86.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

87.    Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

88.    Plaintiff repeats all previous allegations as if set forth in full.

89.    The Individual Defendants acted as controlling persons of Resolute Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Resolute Energy, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

90.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

91.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the

- 22 -

unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Registration Statement.

92.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

93.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

94.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Resolute Energy's stockholders will be irreparably harmed.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Resolute Energy, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed

Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Resolute Energy stockholders;

C.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  January 22, 2019

Respectfully submitted,

By _____

Richard A. Acocelli
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
Email: fortunato@bespc.com

*Attorneys for Plaintiff*

- 24 -